IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITENS INSURANCE COMPANY OF AMERICA,  )<br><br>Plaintiff,  )<br>)<br>v.  )<br>)<br>WYNNDALCO ENTERPRISES, LLC, DAVID ANDALCIO, JOSE FLORES, and MELISSA THORNLEY, DEBORAH BENJAMIN KOLLER, JOSUE HERRERA, MARIO CALDERON, and JENNIFER ROCIO, individually and on behalf of all others similarly situated,  )<br>)<br>Defendants.  ) | No. 20 C 3873<br><br>Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

In this insurance coverage dispute, Citizens Insurance Company of America ("Citizens") seeks a declaratory judgment that it has no duty to defend or indemnify Wynndalco Enterprises, LLC ("Wynndalco") in connection with two class action lawsuits pending in other courts. Wynndalco and two of its executives, David Andalcio (its founder and Chief Executive Officer) and Jose Flores (its Chief Operational Officer) (collectively "Defendants" for purposes of this motion), move to stay this case pending those courts' resolution of certain factual issues that Defendants say touch upon this action. For the reasons that follow, the motion is denied.

I. **Background**

Citizens filed this action for a declaratory judgment "that it has no duty to defend or indemnify under a Business Owners Policy. . . issued to Wynndalco" (the "Policy") in connection with two putative class actions suits pending in other courts. 1st Am. Compl. ¶ 1, ECF No. 20; *see id.* ¶¶ 35–47. The underlying cases are captioned *Thornley v. CDW-Government, LLC*, No. 20 CH 4346 (Cook Cty. Cir. Ct. filed May 27, 2020) (the "*Thornley*" lawsuit); and *Calderon v. Clearview AI, Inc.*, No. 20 CV 1296 (S.D.N.Y. filed Feb. 13, 2020) (the "*Calderon*" lawsuit). *Id.* ¶¶ 1, 18, 28.

Effective from October 2, 2019, to October 2, 2020, the Policy provides liability coverage for Wynndalco's business, including duties to defend and indemnify. *Id.* ¶ 16; *see* 1st Am. Compl., Ex. A., Business Owners Policy No. OBC-H062078-00, ECF No. 20-1. But a provision of the Policy entitled "Distribution Of Materials In Violation Of Statutes" (the "Exclusion") excludes liability coverage for the following:

> "Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
>
> (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
>
> (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
>
> (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or
>
> (4) Any other laws, statutes, ordinances, or regulations, that address, prohibit, or limit the printing, dissemination, disposal, collecting,

> recording, sending, transmitting, communicating or distribution of material or information.

1st Am. Compl. ¶ 17. Citizens contends that the Exclusion applies to the underlying class action lawsuits for which Wynndalco seeks insurance coverage.

The underlying class actions allege that Wynndalco violated the Illinois Biometric Information Privacy Act ("BIPA"), *id.* ¶¶ 26, 33, which prohibits the collection, retention, and disclosure of "biometric identifiers," such as facial scans, or "biometric information," meaning as "any information . . . based on" a biometric identifier, *see* 740 Ill. Comp. Stat. 14/10–14/15. In particular, each case centers around a secretive technology created by a company called Clearview AI, Inc. ("Clearview") that combines a database of over three billion facial scans, amassed by "scraping" photographs from the internet, and a facial recognition application, so as to enable the end-user to identify unknown persons by comparing their facial scan to those included in Clearview's database. 1st Am. Compl. ¶¶ 19, 30; *see* 1st Am. Compl., Ex. B, Am. Class Action Complaint, *Thornely v. CDW-Gov't, LLC*, No. 2020 CH 4346 (Cook Cty. Cir. Ct. Aug. 5, 2020) ("*Thornley* Compl.") ¶¶ 9–11, ECF No. 20-2; 1st Am. Compl., Ex. C, 1st Am. Class Action Compl., *Calderon v. Clearview AI, Inc.*, No. 20 CV 1296 (S.D.N.Y. July 22, 2020) ("*Calderon* Compl.") ¶ 5, ECF No. 20-3. As for Wynndalco, the cases each allege that it operated as Clearview's Illinois-based agent by purchasing Clearview's technology and then reselling or licensing it to law enforcement agencies, whether directly or through another intermediary called CDW-Government, LLC. *See Thornley* Compl. ¶¶ 26–30; *Calderon* Compl. ¶¶ 7, 15.

Among other defendants, the *Calderon* plaintiffs claim that Wynndalco violated the BIPA by capturing, collecting, receiving, storing, disclosing, and/or using biometric identifiers and biometric information, without complying with the statutory requirements, in the course of its agency relationship with Clearview. *See Calderon* Compl. ¶¶ 29–32. The *Thornley* plaintiffs also claim that Wynndalco violated the BIPA, based on its "selling, leasing, trading, or otherwise profiting from [their] biometric identifier[s] or biometric information." *Thornley* Compl. ¶ 69.

Additionally, the *Thornley* plaintiffs bring common law claims of unjust enrichment and invasion of privacy against Wynndalco. The unjust enrichment count asserts that Wynndalco "unjustly benefited . . . from its publication of Plaintiffs' and the Class's biometric identifiers and biometric information." *Id.* ¶ 76. Similarly, the invasion of privacy count declares that Wynndalco's "conduct in publishing and exploiting Plaintiffs' and the Class's biometric identifiers and biometric information . . . constituted an unauthorized intrusion into [their] seclusion" and "was offensive and objectionable." *Id.* ¶¶ 79–80.

Wynndalco reports that the underlying class actions are each in the pleading and early discovery stages. *See* Defs.' Wynndalco, Andalcio, and Flores's Am. Mot. Stay ("Mot.") at 5, ECF No. 51. In the meantime, Wynndalco and two of its executives, Andalcio and Flores, move to stay this case until certain "factual issues" whose determination they say "will impact this Court's coverage decision . . . . have been resolved" in those actions. *Id.* at 1–2, ECF No. 51.[1]

---

[1] Wynndalco initially moved to stay on its own. *See* Def. Wynndalco's Mot. Stay, ECF No. 43. When Andalcio and Flores sought to join in Wynndalco's motion, the Court granted

## II. Legal Standard

The Declaratory Judgment Act "provides the district court with the necessary discretion" to stay an action, including where there are "parallel proceedings" pending in difference courts. *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 378 (7th Cir. 2010). When a stay is sought in this scenario, the district court should consider, among other things, "whether the declaratory suit presents a question distinct from the issues raised in the [parallel] proceeding" and "whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties." *See Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995).

Here, Defendants move to stay under "the so-called *Peppers* doctrine" of Illinois law,[2] which "provides that 'it is generally inappropriate for a court considering a declaratory judgment action to decide issues of ultimate fact that could bind the parties to the underlying litigation.'" *Twin City Fire Ins. Co. v. Law Office of John S. Xydakis, P.C.*, 407 F. Supp. 3d 771, 778 (N.D. Ill. Sept. 16, 2019) (quoting *Allstate Ins. Co. v. Kovar*, 842 N.E.2d 1268, 1275 (Ill. App. 2006) (citing *Md. Cas. Co. v. Peppers*, 355 N.E.2d 24, 30 (Ill. 1976))). "At the same time, the *Peppers* doctrine does allow declaratory judgments on issues that do not decide an ultimate fact in the underlying case." *Twin City Fire Ins. Co.*, 407 F. Supp. at 778.

---

Defendants' unopposed motion for leave to file an amended motion to stay that included these executives, without introducing any substantive changes. *See* Defs. Wynndalco, Andalcio, and Flores's Unopposed Mot. Leave File Am. Mot. Stay, ECF No. 48. Because the motions to stay are essentially duplicates, the original motion is likewise denied.

[2] Defendants presume, and Citizens does not dispute, that Illinois law applies here.

### III. Analysis

Defendants raise several arguments in favor of a stay. First and foremost, they contend that resolving this coverage dispute would require the Court to determine two questions of ultimate fact on which the underlying actions hinge: (1) "whether Wynndalco was a government contractor, and therefore exempted under BIPA"; and (2) "whether Wynndalco 'possessed' biometric information." Mot. at 7.

This argument, however, suffers from several flaws. While the questions of fact that Defendants identify certainly go to the heart of Wynndalco's liability in the *Thornley* and *Calderon* lawsuits, the Court need not resolve either of them to determine whether those lawsuits trigger Citizens' duty to defend.[3] As the Seventh Circuit has observed, an insurer's duty to defend "is most often determined primarily, if not exclusively, from the face of the underlying complaint against the insured." *Nationwide Ins.*, 52 F.3d at 693. Under this analysis, "[a]s long as the complaint comprehends an injury which may be within the scope of the policy, the company must defend the insured until the insurer can confine the claim to a recovery that the policy does not cover," with any doubts on this score being resolved in favor of the insured. *Id.* at 693–94 (cleaned up). As a result, "a court ordinarily will have no

---

[3]  As an initial matter, Defendants argue that the duty-to-indemnify aspect of Citizens' claims for declaratory relief should be dismissed because "the issue of whether Citizens has a duty to indemnify Wynndalco . . . will not be ripe until liability is established in the underlying . . . actions." Mot. at 5 (citing *Med. Assur. Co.*, 610 F.3d at 375). But this is not necessarily so. Rather, while "the insurer's duty to indemnify cannot be determined until the underlying action has been adjudicated" where "the duty to defend exists," a court "may simultaneously determine that the insurer has no duty to indemnify" where it "determines that the insurer has no duty to defend." *Abrams v. State Farm Fire & Cas. Co.*, 714 N.E.2d 92, 95 (Ill. App. Ct. 1999).

reason to immerse itself in the facts surrounding the incident in question; it need only look to the allegations made against the insured and decide whether, if proven, those allegations would establish an injury that the policy would cover." *Id.* at 694.

That is precisely the case here. To determine whether Citizens has a duty to defend, the Court need only ask whether the allegations of the *Thornely* or *Calderon* complaints, "*if proven, . . . would establish* an injury" covered by the Policy—*i.e.*, one that falls outside the scope of the Exclusion. *See id.* (emphases added). In other words, the Court need only consider whether the *Thornley* or *Calderon* complaints allege any injury other than "'[b]odily injury', 'property damage', or 'personal and advertising injury' arising directly or indirectly out of an act or omission that violates or *is alleged to violate* . . . . [a]ny . . . laws, statutes, ordinances, or regulations, that address, prohibit, or limit the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information," regardless of whether Wynndalco is ultimately found liable for such an injury. *See* 1st Am. Compl. ¶ 17 (emphasis added). This question can be evaluated "primarily, if not exclusively," from the face of the underlying complaints, *Nationwide Ins.*, 52 F.3d at 693, "without any incursion into factfinding that would interfere" with the underlying actions, *id.* at 695. Indeed, Defendants implicitly recognize as much in their briefs, where they cite multiple precedents for the proposition that the insurer's "duty to defend exists as long as the *allegations* of the underlying complaint are potentially within the scope of coverage." *See, e.g.*, Defs.' Reply Supp. Mot. Stay

7

("Reply") at 3, ECF No. 52 (quoting *Axiom Ins. Managers, LLC v. Capitol Specialty Ins. Corp.*, 876 F. Supp. 2d 1005, 1008 (N.D. Ill. 2012) (emphasis added)).

Defendants' efforts to distinguish *Nationwide Insurance* are unavailing. They retort that it "does not apply in the instant case" because, in that case, the insured filed a motion to dismiss, not a motion to stay. *Id.* But the insured in that case moved to dismiss for the same reason that Defendants move to stay, and on the same legal grounds. *See Nationwide Ins.*, 52 F.3d at 691–94; *cf., e.g., Ironshore Indem., Inc. v. Synergy Law Grp., LLC*, 926 F. Supp. 2d 1005, 1011–12 (N.D. Ill. 2013) ("[I]n determining whether *to stay or dismiss* a declaratory judgment action in the face of parallel state court proceedings . . . ." (emphasis added)).

Defendants also assert that the insurer in *Nationwide Insurance* "was providing a defense [in] the underlying action," whereas Citizens, they report, is not currently doing so. Reply at 3. But that, too, is beside the point. *See Nationwide Ins.*, 52 F.3d at 691 (noting that the insurer had been "supplying a defense . . . . in the state action under a reservation of rights" only to show that it had not waived its claim for declaratory relief). Whether the insurer is or is not defending the insured in the interim has no bearing on whether it has a "*duty* to defend." *See id.* at 693 (emphasis added).

The other cases on which Defendants rely are not to the contrary. In one, an Illinois appellate court upheld a stay where the exclusion on which the insured relied would have required the trial court to find facts "contradict[ing] the allegations in the underlying complaint." *Sentry Ins. v. Cont'l Cas. Co.*, 74 N.E.3d 1110, 1126 (Ill. App.

2017). Similarly, in the other, a federal district court granted a stay where it found that the issue of coverage required it to resolve two "contested issues [of fact] in the underlying action." *Lexington Ins. Co. v. Bd. of Educ. of Lake Forest Cmty. High Sch. Dist. 115*, No. 11 C 556, 2012 WL 74778, at *2 (N.D. Ill. Jan. 10, 2012). These scenarios are each accounted for in *Nationwide Insurance*, where the Seventh Circuit discussed the "occasion[al]" case in which "the court presiding over the declaratory action cannot decide whether the insured . . . has coverage or not"—such as where coverage rests on "whether the insured acted negligently or intentionally"—"without resolving disputes that should be left to the court presiding over the underlying tort action." *See* 52 F.3d at 694. But neither scenario applies here.[4]

Defendants' second argument fares no better. Here, reading the Exclusion to be "limit[ed] . . . to statutory violations," Defendants suggest that it does not apply to the common law claims brought against Wynndalco in the *Thornley* action. *See* Mot. at 6–7. But this line of reasoning goes only to the merits of one of the claims raised in *this* case—*i.e.*, whether Citizens has a duty to defend Wynndalco in connection with the *Thornley* action—not whether the Court must decide an issue of ultimate fact "that could bind the parties to the underlying litigation" to get there. *See Allstate Ins.*

---

[4] In yet another case cited in Defendants' reply, an Illinois appellate court affirmed the denial of a stay where "[t]he sole issue determined by the trial court in the declaratory proceeding" was not "crucial to the underlying litigation." *Fid. & Cas. Co. of N.Y. v. Envirodyne Eng'rs, Inc.*, 461 N.E.2d 471, 476 (Ill. App. Ct. 1983). For that reason, the trial court had even looked "beyond the underlying complaint"—and "properly" so, the appellate court held—in determining the issue of coverage. *See id.* at 473–76. Yet, the only similarity between that case and this one is that Defendants have identified no fact crucial to the underlying actions that must be resolved to determine whether Citizens has a duty to defend.

9

*Co.*, 842 N.E.2d at 1275. For the reasons discussed above, Defendants fail to show that it must.

Defendants' remaining arguments are equally meritless. They contend that allowing this action to proceed will "unduly prejudice Wynndalco in the [underlying] class actions by forcing [it], in this federal action, to consider and even amplify arguments put forth by the plaintiffs in those cases." *Id.* But that is simply incorrect: as discussed above, Wynndalco need only argue that the allegations of the underlying complaints, "*if proven*," would establish an injury covered by the Policy. *See Nationwide Ins.*, 52 F.3d at 694 (emphasis added). For the same reason, the task of answering the complaint in this case does not amount to a "dress rehearsal" for the underlying cases. *See* Mot. at 11. Finally, the possibility that the *Thornley* plaintiffs may yet bring "new claims" has no bearing on whether the claims already brought trigger Citizens' duty to defend. *See* Mot. at 10.

In sum, because Citizens' declaratory judgment action "presents a question distinct from the issues raised" in the underlying *Thornley* and *Calderon* class actions, to which an answer "will serve a useful purpose in clarifying the legal obligations and relationships among the parties," *Nationwide Ins.*, 52 F.3d at 692, the Court finds that a stay is unwarranted.

## IV. <u>Conclusion</u>

For the forgoing reasons, Defendants' motion to stay is denied.

**IT IS SO ORDERED.**  **ENTERED: 1/27/21**

*/s/ John Z. Lee*

**John Z. Lee**
**United States District Judge**